IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **MILLAR WATSON**, personal representative of THE ESTATE OF MITCHELL WATSON former resident of the Town of Dexter, County of Somerset, State of Maine<br><br>　　Plaintiff,<br><br>　　v.<br><br>**SOMERSET COUNTY,** State of Maine<br><br>and<br><br>**DALE P. LANCASTER**, in his official and individual capacity as Sheriff of Somerset County,<br><br>and<br><br>**MICHAEL PIKE**, in his official and individual capacities as Assistant Administrator of Somerset County Jail,<br><br>and<br><br>**JOSHUA BOWDEN**, in his official and individual capacity as a Supervisor of Somerset County Jail,<br><br>　　Defendants. | CASE NO.<br><br>JUDGE:<br><br>**COMPLAINT** |

### I.   PRELIMINARY STATEMENT

1. This civil rights case challenges the Defendants' failure to provide adequate mental and physical health care to a detainee while incarcerated in the Somerset County Jail ("the Jail"). The Somerset County Jail is a facility owned and operated by the County of Somerset, State of Maine, and is located in Madison, Maine. Mitchell Watson entered the Somerset County Jail on or about February 2, 2023. On February 6, 2023, he died from exposure to drugs while he

was housed at the Somerset County Jail. Defendants knew, or should have known, that Mr. Watson was suffering from serious symptoms of drug exposure and deliberately or with depraved indifference let him die. Defendants further negligently failed to secure the Jail from the importation of drugs into the facility. Millar Watson, the personal representative of Mr. Watson's estate, brings this action to secure fair compensation and to encourage these and similar defendants to provide adequate preventative measures and to provide safe and effective medical treatment and supervision of detainees.

## II. JURISDICTION

2. This claim is brought under the Civil Rights Act of 1871, 42 U.S.C. §1983. This Court has jurisdiction to hear this claim under 28 U.S.C. §§1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367. The venue is proper in this Division.

## III. THE PARTIES

3. Millar Watson, the father of Mitchell Watson, (hereinafter "The Decedent"), brings this suit as the personal representative of the Estate of Mitchell Watson for the benefit of his kin and heirs.

4. The Decedent was a resident of Dexter, County of Penobscot, Maine.

5. Defendant Dale P. Lancaster was, at all times relevant, the Sheriff of Somerset County, State of Maine, at the time of the incident, and in his capacity as Sheriff of Somerset County had responsibility for the oversight and operations of the Somerset County Jail and is a "person" under 42 U.S.C. §1983 and is being sued in his individual and official capacities.

6. Defendant Michael Pike was, at all times relevant, the Assistant Jail Administrator at Somerset County Jail, is a "person" under 42 U.S.C. §1983 and is being sued in his individual and official capacities.

7. Defendant Joshua Bowden was, at all times relevant, Supervisor of Corrections Officers at Somerset County Jail, is a "person" under 42 U.S.C. §1983 and is being sued in his individual and official capacities.

## IV.    FACTS

8. On or about February 2, 2023, Decedent arrived at the Jail as a detainee.

9. During intake, Decedent also provided a personal medical history to a member of the Jail nursing staff.

10. Between February 2, 2023 and February 6, 2023, the Defendants were well aware of an influx of dangerous street drugs into the Jail from various sources.

11. The Somerset County Jail has one of only two machines in the State that are capable of whole-body scans. The machine is used only sporadically.

12. Around noon on February 5, 2023, the Decedent's roommate, Eric B. Nadeau, Jr., reported to the Jail staff that Decedent was behaving oddly.

13. Throughout the day, Plaintiff's roommate reported on the Decedent's deteriorating condition to corrections officers.

14. The corrections officer ("C.O.") on duty in the pod, Corinne Pelletier, was uncertified, untrained, unsupervised, and unassisted.

15. At some point in the evening of February 5, 2023, C.O. Pellitier reported to Defendant Corporal Joshua Bowden that the Decedent was unable to be roused from sleep.

16. Defendant Bowden ignored the reports.

17. After C.O. Pelletier's second phone call to Defendant Bowden, he made a perfunctory attempt to get the Decedent to respond to stimuli but ultimately gave up and simply left the Decedent ultimately to die.

18. Up to this point, no medical personnel were called.

19. Despite Decedent being nonresponsive, Defendant Bowden left the Decedent in his cell, without medical care, because Defendant Bowdoin reportedly "wanted to go home."

20. Upon information and belief, corrections staff are required to observe prisoners every 15 minutes and memorialize what they see in a jail log.

21. Upon information and belief, the front-line Corrections Officers were inadequately trained, certified, or supervised.

22. The number of Corrections Officers on duty was inadequate for proper supervision of the Jail population.

23. Defendant Bowden displayed depraved indifference and outright animosity to the inmates in his charge and care.

24. Corrections Officers on the pod floor were supervised by Defendant Bowden who was well known to his supervisors as a poorly functioning supervisor who was known to invade inmate privacy, "flip off" the inmate population, and who referred to the Decedent as a "slug" and the inmates in his care as "slugs."

25. Although an opioid antidote was available to the Defendants to revive inmates suffering from drug exposure, the Defendants failed or failed to timely administer any such medication to the Decedent.

26. Defendant Bowden was in turn supervised by all other Defendants who continued to employ and promote Defendant Bowden despite known problems.

27. Defendants were aware of the risk of their failure to train staff or supervise inmates.

28. It is policy and well understood by Corrections Officers that they are under an obligation to determine periodically – every 15 minutes – that each inmate in their care has "living, breathing flesh."

29. In the instant case, Defendants deliberately, and with depraved indifference, ignored this basic duty for at least 12 hours.

30. The Decedent was pronounced dead on February 6, 2023 at 1:18 a.m.

31. Defendants were each deliberately indifferent to the Decedent's serious medical needs. Each knew that the Decedent had been experiencing significant medical symptoms. Despite this knowledge, each Defendant failed to provide or obtain the necessary emergency medical care the Decedent required. This failure by each was negligent, knowing, intentional, willful, wanton, reckless, and deliberately indifferent. As a result, the Decedent suffered extreme, extended pain and anguish and eventual death.

32. For a period of over 12 hours, the Defendants observed the Decedent suffering serious problems and made a deliberate choice to deprive the Decedent of the necessary emergency medical care his condition required.

33. Defendants were also deliberately indifferent to the serious medical needs of the Decedent by failing to train and supervise staff and failing to establish and implement jail policies, practices, customs, and usages that trained and enabled jail staff to adequately respond to a prisoner's serious medical needs, including those manifested by Decedent. This failure to train was a moving force behind Decedent's injury and death.

34. Defendants were on notice that prisoners housed in the Jail may suffer from serious medical conditions like those suffered by Decedent. It is foreseeable that a prisoner in jail may be exposed to illegal narcotics, and that failure to provide the prisoner access to adequate and

timely medical care could result in that prisoner suffering physical and emotional pain, serious injury, and eventual death. Despite this, these Defendants failed to train corrections staff, including the Corrections Defendants, on how to recognize and respond to such medical emergencies. This was the moving force behind the constitutional deprivation suffered by the Decedent.

35. The negligent, reckless, willful, wanton, malicious, and in bad faith conduct of all Defendants shocks the conscience, violates the standards of all decency in an evolving society, and betrays the trust that prisoners and the public place in jail staff when they deprive inmates of the means to take care of themselves, making them dependent on the jail staff for all of their basic needs including but not limited to security and medical care.

## COUNT I
## 42 U.S.C. § 1983
## Denial of Rights in Violation of the Eighth Amendment and Fourteenth Amendment; Deliberate Indifference to Medical Needs

36. The Plaintiff repeats, re-avers, and realleges each and every allegation contained in paragraphs one through 35 as if expressly set forth herein.

37. Defendants are responsible for the training of Corrections Officers and ensuring the adequate policies and procedures of the Somerset County Jail are developed and complied with by Corrections Officers and other employees to ensure that detainees such as Decedent receive adequate medical attention and treatment.

38. Defendants took no actions or interventions which would have saved the Decedent's life, despite having such an opportunity to do so.

39. Defendants displayed outright animosity and a lack of concern about the human beings in their care, even during acute and life-threatening medical events, and even when the medical event was occurring right before their eyes.

40. The inactions and deliberate indifference of both Corrections Officers and Supervisory Corrections Officers violated the Decedent's clearly established rights.

41. All of the Defendants were acting in the scope of their official duties and under the color of state law.

42. The Defendants' failure to act during a clear medical event presented a substantial risk of serious harm to Decedent and demonstrated deliberate indifference to serious, and obvious, medical needs.

43. Deliberately and/or indifferently allowing a detainee to die from a treatable medical condition is a cruel and unusual punishment in violation of the Eighth Amendment.

44. Defendants' actions "Shock the Conscience."

45. Defendants' actions and inactions were done with deliberate indifference or malice.

WHEREFORE, the Plaintiff demands judgment against the Defendants plus compensatory damages, punitive damages, attorney's fees, interest, costs, and such other and further relief as this Court deems just and proper.

## COUNT II
## 42 U.S.C. § 1983
## Failure to Train and Supervise in Violation of the Eighth Amendment

46. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs one through 45 as if expressly set forth herein.

47. Observing Corrections Officers and Supervising Corrections Officers were not trained in the proper action to take when observing a person having serious medical difficulties, and/or the training and policies established and implemented by Jail administrators were inadequate to assure that the Decedent received adequate and humane treatment while incarcerated.

48. Defendants failed to meet their duties by failing to properly train and supervise Corrections Officers under their authority and control on the law, policies, and procedures concerning attention to medical needs of prisoners.

49. Defendants' failure to appropriately train and supervise Corrections Officers under their control, and the failure of Defendants to, in fact, act appropriately to medical events, directly and proximately caused the Decedent to suffer physical harm, severe emotional distress, pain, suffering, and ultimately death.

50. Defendants' clear and deliberate indifference in failing, in an administrative and supervisory role, to provide training and supervision to their employees in such a manner that put detainees at a substantial risk of serious harm contributed to Decedent's civil rights deprivation.

51. The acts and omissions of all of the individual Defendants demonstrated reckless and/or deliberate indifference to and a conscious disregard for the well-being of the Decedent and his constitutional rights, and let Decedent suffer a long, painful death.

52. Defendants were deliberately indifferent to Decedent's serious medical needs by failing to adequately train and supervise Jail staff to prepare for, recognize, and respond when prisoners suffer from obvious serious medical needs.

53. Defendants were so indifferent to the needs of detainees, that they tolerated and encouraged a culture of dehumanization and mistreatment of inmates, directly supporting and cultivating a malicious disregard to the constitutional needs of individuals under their custody and care.

54. Decedents' suffering and death were a proximate cause of Defendants' wanton disregard for his constitutional rights.

   WHEREFORE, Plaintiff respectfully requests damages, punitive damages costs, and such other relief as this Court deems just and proper.

**COUNT III**
**Me. Rev. Stat. tit. 18-C, § 2-807; Me. Rev. Stat. tit. 14, § 8104-C**
**Pendent State Claim—Wrongful Death**

55. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs one through 54 as if expressly set forth herein.

56. All of the Defendants, and each of them, had the duty to provide immediate medical care to the Decedent and to protect the Decedent from self-harm or accidental suicide. Staff failed and/or refused to summon and provide necessary medical care to address the Decedent's serious and obvious medical condition.

57. Among other negligent acts or omissions, the Defendants failed to provide regular and continuous observation and supervision of the activities of the Decedent.

58. Despite the Defendants' actual and/or constructive knowledge of the Decedent's need for medical care, the Defendants negligently failed or refused to provide the Decedent with adequate medical assistance, thereby breaching duties they owed to the Decedent.

59. As a legal and proximate result of the Defendants' failure to provide adequate medical care and to protect the Decedent from preventable harm and injury, the Decedent suffered great physical pain and, ultimately, death.

60. The Defendants committed reckless and conscious disregard for the Decedent's well-being while he was in their custody and care, leading to his death.

WHEREFORE, Plaintiff respectfully requests damages, punitive damages costs, and such other relief as this Court deems just and proper.

**V.     PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands that this Court:

A. Award Plaintiff compensatory damages in an amount to be shown at trial;

B. Award Plaintiff punitive damages in an amount to be shown at trial;

  C.  Award Plaintiff reasonable attorney's fees, costs and disbursements;

  D.  Grant Plaintiff such additional relief as the Court deems just and proper.

                    Respectfully Submitted,

Dated: May 20, 2024            */s/ Stephen C. Smith*
                    Stephen C. Smith, Esq., Bar No. 8720
                    Attorney for Plaintiff
                    STEVE SMITH Trial Lawyers
                    191 Water Street
                    Augusta, ME 04330
                    T (207) 622-3711
                    F (207) 707-1036
                    *Info@MaineTrialLaw.com*